STATE OF NEW JERSEY, IN THE INTEREST OF M. S.,
    JUVENILE-APPELLANT.

STATE OF NEW JERSEY, IN THE INTEREST OF E. O.,
    JUVENILE-APPELLANT.

STATE OF NEW JERSEY, IN THE INTEREST OF D. K.,
    JUVENILE-APPELLANT.

STATE OF NEW JERSEY, IN THE INTEREST OF E. M.,
    JUVENILE-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued January 20, 1976—Decided February 27, 1976.

Before Judges KOLOVSKY, BISCHOFF and BOTTER.

*Ms. Marcia R. Richman,* Assistant Public Defender, argued the cause for all four appellants (*Mr. Stanley C. Van Ness,* Public Defender, attorney; *Ms. Rita L. Bender,* designated counsel, on the brief on behalf of M.S.; *Mr. Louis R. Vinci,* Assistant Deputy Public Defender, of counsel and on the brief on behalf of E.O.; *Ms. Rosemary K. Reavey,* Assistant Deputy Public Defender, of counsel and on the brief on behalf of D.K. and E.M.).

*Mrs. Sara A. Friedman,* Assistant Prosecutor, argued the cause for the State of New Jersey (*Mr. Joseph P. Lordi,* Essex County Prosecutor, attorney).

*Mr. Lowell Espey,* Deputy Attorney General, argued the cause on behalf of the Attorney General as *amicus curiae* (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney).

The opinion of the court was delivered by

KOLOVSKY, P. J. A. D. All four of the above appeals, consolidated for argument, involve the same principal issue. May a juvenile, who has been taken into custody on a charge that he or she is a juvenile in need of supervision and placed, by order entered following a shelter care hearing (*N. J. S. A.* 2A:4–58) by a judge of the Juvenile and Domestic Relations Court (Juvenile Court), in a shelter care facility pending final disposition, be charged as and adjudicated a

juvenile delinquent for leaving the shelter without permission? The Juvenile Court judge in each case answered that question in the affirmative, ruling that the juvenile's conduct, had it been committed by an adult, would constitute the crime of "escape," in violation of *N. J. S. A.* 2A:104–6.[1] Each juvenile was found delinquent for escaping from the shelter where she or he had been placed pursuant to court order. In one of the cases, *State in the Interest of M.S.,* a written opinion was filed and is reported in 129 *N. J. Super.* 61 (J. & D. R. Ct. 1974).

A dispositional hearing followed each adjudication of delinquency. M.S. was remanded to the Division of Youth and Family Services to effectuate her placement; E.O. was placed on formal probation for one year on condition that she attend "Mt. Carmel Guild or N. J. Rehabilitation" for counselling, and D.K. and E.M. were each placed on probation for one year.

These appeals followed. In each of the separate briefs filed by the Public Defender on behalf of the four juveniles it is argued, in essence, that running away from a shelter care facility does not constitute a violation of the "escape" statute, and to rule that it does violates the purpose and spirit of the 1973 revision of the Juvenile Court Act which became effective on March 1, 1974. *L.* 1973, c. 306; *N. J. S. A.* 2A:4–42 *et seq.*

---

[1]*N. J. S. A.* 2A:104–6 reads as follows:

Any person imprisoned or detained in a place of confinement, or being in the lawful custody or control of a penal or correctional institution or of an officer or other person, upon any charge, indictment, conviction or sentence for any crime, or upon any writ or process in a civil action or proceeding, or to await extradition, who by force or fraud escapes or attempts to escape from such place of confinement or from such custody or control, or leaves the building or grounds of his place of confinement without the consent of the officer in charge, is guilty of a misdemeanor. The statutory history leading to its present form is set forth in *State v. Frost,* 95 *N. J. Super.* 1 (App. Div. 1967), and *State in the Interest of M. S., supra* at 67.

(In addition, the brief filed for M.S. argues that the application of the escape statute to her conduct violates her rights to due process and the equal protection of the law. The constitutional arguments thus presented are so obviously lacking in merit as not to warrant any discussion.)

The county prosecutor filed an answering brief in each case. The Attorney General, as an *amicus curiae*, filed one brief applicable to all four appeals. But neither the prosecutor nor the Attorney General argues in support of the rulings made by the trial courts.

On the contrary, the prosecutor contends that the juveniles' conduct in leaving the shelter care facilities "should not constitute a violation of the escape statute." The Attorney General argues that (1) the juveniles should not be deemed to have been in custody or confinement under civil process within the contemplation of the escape statute, and (2) even if they be deemed to have been in such custody, there was no violation of the escape statute because "application of the statute must * * * be premised upon the use of force or fraud to effectuate the escape," and allegedly none of the juveniles used either force or fraud to effectuate their respective escapes.

Neither the arguments presented in the briefs submitted nor the expansion thereof offered at oral argument of the appeals convinces us that the trial courts erred in their rulings. On the contrary, we are satisfied that those rulings were correct and affirm substantially for the reasons given by Judge Matturri in his opinion in *State in the Interest of M.S., supra*, with the following additional observations.

The argument that the application of the escape statute to juveniles in need of supervision violates the purpose and spirit of the 1973 revision of the Juvenile Court Act is bottomed on the fact that under the 1973 statute a juvenile's acts of misbehavior, ungovernability or unruliness which do not violate the criminal law do not — as they would under the prior law — subject him to adjudication as a delinquent.

Under the 1973 act delinquency means the commission of an act by a juvenile which if committed by an adult would constitute an indictable or disorderly persons offense, or a violation of any other penal statute, ordinance or regulation. (Excepted from the last group is a violation of specified sections of *Title* 39, "Motor Vehicles", committed by juveniles 17 years or older, who may be prosecuted therefor as if they were adults.) *N. J. S. A.* 2A:4–44.

*N. J. S. A.* 2A:4–45 defines the other class of juveniles with which the Juvenile Court is concerned, juveniles in need of supervision:

As used in this act, "juvenile in need of supervision" means:

a. A juvenile who is habitually disobedient to his parent or guardian;

b. A juvenile who is ungovernable or incorrigible;

c. A juvenile who is habitually and voluntarily truant from school; or

d. A juvenile who has committed an offense or violation of a statute or ordinance applicable only to juveniles.

Evidence of conduct which is ungovernable or incorrigible may include but shall not be limited to:

(1) habitual vagrancy,

(2) immorality,

(3) knowingly visiting gambling places, or patronizing other places or establishments, the juvenile's admission to which constitutes a·violation of law,

(4) habitual idle roaming of the streets at night,

(5) deportment which endangers the juvenile's own morals, health or general welfare.

The argument that the purpose and spirit of the 1973 act precludes the court from adjudging delinquent a juvenile allegedly in need of supervision, who has escaped from the shelter in which he has been placed by court order pending final disposition, ignores that while such a juvenile is in a different class than a juvenile who is charged with delinquency, he is nevertheless still subject to the jurisdiction of the Juvenile Court. Conduct of the character described in *N. J. S. A.* 2A:4–45 still constitutes, under the 1973 act, grounds for asserting Juvenile Court jurisdiction, exclusive in nature, *N. J. S. A.* 2A:4–46(a), of the juvenile whose

conduct is proscribed, with the court being authorized in appropriate cases to confine the juvenile in a shelter care facility in which he or she is to remain pending final disposition of the case.

Although some writers[2] have suggested that, as a matter of legislative policy, acts of the character described in *N. J. S. A.* 2A:4–45 which do not violate the criminal law should not constitute a ground for asserting Juvenile Court jurisdiction over the juvenile committing them, the contrary is the legislative policy of this State.

The 1973 act evidences a legislative determination that the welfare of juveniles in need of supervision as well as that of society requires that the court have power, by issuance of coercive orders, to deal with such juveniles in an effort to eliminate or ameliorate the problems involved rather than leave such amelioration to the voluntary action of the juvenile. See *N. J. S. A.* 2A:4–56(c), 58, 61 and 62.

So, *N. J. S. A.* 2A:4–54(b), provides:

A juvenile may be taken into custody if the law enforcement officer has reasonable cause to believe that the juvenile is in need of supervision.

Whether or not the juvenile has been taken into custody by a police officer, the jurisdiction of the Juvenile Court may be invoked by any of the following:

\* \* \* a representative of a public or private agency authorized to provide care or supervision of juveniles; a representative of a public or private agency providing social services for families or children; a school official; a law enforcement, correction or probation officer; or a parent or guardian. [*N. J. S. A.* 2A:4–53(b)]

by filing a complaint charging that the juvenile is in need of supervision. See *R.* 5:8–1.

---

[2] See, e. g., "The Challenge of Crime in a Free Society, a report by the President's Commission on Law Enforcement and Administration of Justice," at 85 (1967); Note, "Ungovernability: The Unjustifiable Jurisdiction," 83 *Yale L. J.* 1383 (June 1974).

While the statute contemplates that normally the juvenile is not to be taken or kept in custody or confinement either pending the adjudication hearing or the final disposition hearing, it recognizes that in some cases such custody and confinement is necessary or required. To that end the court, after holding a preliminary shelter care hearing on due notice (*N. J. S. A.* 2A:4–58), is authorized, in appropriate cases, to order the juvenile "placed or retained in shelter care" pending final disposition of his case. *N. J. S. A.* 2A: 4–56(c). "Shelter care" is defined as "the temporary care of juveniles in facilities without physical restriction pending court disposition." *N. J. S. A.* 2A:4–43(d).

It is conceded that in each of the four cases an order was entered after a preliminary shelter care hearing directing that the juvenile be placed and retained in a specific authorized (*N. J. S. A.* 2A:4–57(a)(2)) shelter care facility pending the court's final disposition of his or her case. Further, it is not disputed that each juvenile willfully, and in violation of the court's order, left the shelter care facility without the consent of the official in charge thereof. In so doing the juvenile committed an act different from and beyond those referred to in the statutory definition of a juvenile in need of supervision. It was an act which, if committed by an adult, would be a misdemeanor under the escape statute, *N. J. S. A.* 2A:104–6, and so constituted an act of delinquency under *N. J. S. A.* 2A:4–44.

The order directing that the juvenile be placed and retained in the shelter facility was a "writ or process in a civil action or proceeding," as that term is used in *N. J. S. A.* 2A:104–6. Once that order was entered and the juvenile placed in the designated shelter facility, that was his place of confinement. His leaving the facility without permission constituted a leaving of "the building or grounds of his place of confinement without the consent of the officer in charge" within the interdiction of *N. J. S. A.* 2A:104–6. Contrary to what the Attorney General argues, it was not necessary to also show that the escape was effectuated by

force or fraud. *State v. Walker,* 131 *N. J. Super.* 547, 549 (App. Div. 1974).

It is of no moment that, as the statute requires, the facility was not one with locked doors or other physical restrictions. The juvenile was confined to the facility by the court's order directing that he be placed and retained there.

That order and the statutory power granted to the court to enter it would be meaningless if, as the Public Defender suggested at oral argument, the juvenile was free, despite the order, to leave the facility without permission and did not have to remain there until permitted, by proper authority, to leave it.

The judgment in each case is affirmed.

NEW JERSEY DEPARTMENT OF TRANSPORTATION, DIVISION OF AERONAUTICS, PLAINTIFF-RESPONDENT, v. THOMAS BRZOSKA, DEFENDANT-APPELLANT.